FILED
99 FEB 10 AM 11:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY FULLER, | ] |
| Petitioner, | ] |
| vs. | ] CV 96-N-3288-S |
| ATTORNEY GENERAL OF THE STATE OF ALABAMA, et al., | ] |
| Respondents. | ] |

ENTERED
FEB 10 1999

### Memorandum of Decision

The court has for consideration the Second Report and Recommendation of the United States Magistrate Judge and objections thereto by both parties. Petitioner Timothy Fuller challenges his Alabama state court conviction for unlawful possession of a controlled substance, claiming he was denied the effective assistance of counsel because his attorney failed to interview a potentially exculpatory witness. He therefore petitions for relief pursuant to 28 U.S.C. § 2254.

The Magistrate Judge concluded that petitioner's attorney's actions were professionally unreasonable, but nonetheless recommended that the petition be denied, finding that the error was not sufficiently prejudicial to undermine confidence in the jury's guilty verdict. Both parties have objected, respondents challenging the Magistrate Judge's conclusions as to reasonableness and petitioner challenging his findings on the prejudice

question. The court, having carefully considered the objections *de novo*, concludes that petitioner's objections are well taken but respondents' are not.

With one isolated exception, discussed below, the court concurs with and adopts the factual findings and legal analysis presented in the Magistrate Judge's thoughtful report. Between this report and the Magistrate Judge's initial Report and Recommendation, which the court adopted by order of March 4, 1998, much of the relevant ground has already been covered. Therefore the court will keep its own analysis relatively brief.

The court's examination of the record reveals that the issue of guilt or innocence at trial was quite close. This is not a case in which there was overwhelming evidence of the defendant's guilt. Essentially, petitioner was convicted for being present in a drug dealer's apartment at the time of a police raid. Only three pieces of evidence tied him to the drugs found out of sight in the back room: 1) his physical presence; 2) mail found in the apartment's garbage can with his name, but another address, on it; 3) a keyring including a key to the apartment, which police testified they found on his person. At trial, petitioner had an explanation for each of these pieces of evidence. He claimed that he had been sent to the apartment on an errand for his employer. Petitioner explained that he had brought the mail in from his car on his way into the apartment and thrown it away in an attempt to keep his car clean. Finally, he claimed that the keyring was not his but was turned up by the police elsewhere in the apartment and mistakenly attributed to him during the hustle and bustle of the raid. Petitioner's employer corroborated the first part of his story, but Fuller's explanations about the mail and the keys were not backed up by any other witness.

2

Petitioner's claim before this court is that there was a witness who would have corroborated these crucial aspects of his testimony, if his attorney had only interviewed the witness and put him on the stand. According to petitioner, Floyd Griffin, who leased the apartment and pled guilty to possession of the drugs found in it, would have backed up his testimony on both of these points, as well as testifying that the petitioner did in fact arrive at the apartment on an errand unrelated to drugs mere minutes before the police arrived. However, Fuller's attorney never talked to Griffin. The Magistrate Judge found that the failure to do so was professionally unreasonable, and this court agrees.

Respondents argue that Mr. Fuller's attorney made a reasonable, tactical decision not to interview or call Griffin, and that the Magistrate Judge therefore erred in concluding that the attorney behaved unreasonably. The attorney testified at a hearing that he had two principal reasons for not calling or interviewing Griffin: 1) he was afraid that Griffin might contradict the plaintiff's testimony; and 2) he did not want to have Griffin testify for the petitioner and so visually "link" his client with a convicted drug dealer. The court agrees with the Magistrate Judge that neither of these reasons represented a reasonable basis for discarding Griffin's possible testimony, particularly since the attorney failed to inform himself about what that testimony might be before making the "tactical" decision not to use it.

A basic investigation and interview would have allowed counsel to determine what Griffin's testimony would likely be,[1] assuaging the first of the attorney's concerns. The

---

[1] The concern may have been that Griffin, concerned about his own conviction and sentencing, would shade his testimony to make himself look better and the petitioner look worse. If so, a little investigation would have turned up the information that Griffin had already pled guilty and been sentenced, removing any personal

3

second reason given is weak in and of itself, as the attorney knew that whatever he did there would be testimony that Griffin and petitioner were found by the police in the same apartment and that Griffin had already been convicted of a drug offense arising out of that incident. Given the clear link between Griffin and Fuller, the court finds it hard to understand what difference an additional "visual link" would have made. Even if trial counsel's concern on this point is accorded some weight, the court does not believe that a reasonable attorney could have weighed out this risk against the benefit of Griffin's testimony without knowing what that testimony would be. Indeed, as discussed below the record indicates that Griffin's testimony would have been entirely favorable and, more importantly, would have provided much needed support for critical portions of the petitioner's own testimony. Therefore the court strongly suspects that, had petitioner's counsel made himself aware of what Griffin's testimony would be, he would not have hesitated to use this testimony at trial. The court sees no need to defer to an uninformed decision, however "tactical" the attorney might have felt it to be at the time. Therefore the court concludes that the attorney's decision not to interview Griffin was not professionally reasonable, and that this error was prejudicial in the sense that Griffin likely would have been called to testify if the attorney had made a proper investigation.

The question then becomes whether Griffin's testimony would have made any difference in the outcome of the trial. The court finds that it likely would have. The court agrees with petitioner that the Magistrate Judge did not consider the entire applicable

---

interest in his testimony regarding the petitioner.

4

record in reaching his contrary conclusion. The Magistrate Judge reasoned that "[a]lthough [Griffin] could corroborate that petitioner came to the apartment only minutes before the raid and that drugs were neither discussed with him or out in the open for him to see, [Griffin] apparently could not help on the critical issues that linked petitioner to the apartment: the presence of trash bearing his name in the apartment and the key in his possession that unlocked the apartment door." *Magistrate Judge's Second Report and Recommendation*, at 9. Because Griffin could provide no help on these "critical" questions, the Magistrate Judge concluded that his testimony, while favorable, would probably not have been sufficient to influence the outcome of the case.

The Magistrate Judge's assessment was apparently based solely on the testimony given by Griffin at an evidentiary hearing. At the hearing, Griffin testified about when Fuller arrived at the apartment and what happened thereafter, but was not asked directly about the trash or the keys. Griffin's testimony at the hearing, while favorable to the petitioner, added little to the evidence already available at the trial, so the court agrees with the Magistrate Judge that if the hearing is the only evidence properly before the court, petitioner has not proven that Griffin's testimony would likely have affected the outcome.

However, as petitioner points out, Griffin also executed an affidavit which went beyond his hearing testimony, and in which he swore that he would have testified that the keyring at issue was his, not petitioner's, and that petitioner's explanation concerning the arrival of his mail in the apartment's garbage can was accurate. Petitioner asserts that the Magistrate Judge erred in not considering this affidavit, and the court agrees.

5

Griffin's affidavit was submitted to the state court during post-conviction proceedings, considered by the state courts during their review, forwarded to this court as an addendum to Fuller's petition, and adopted into the record as an exhibit as part of respondents' answer to the petition. *See Return of Respondents*, at 5; *see also* Rule 5 of the Rules Governing Section 2254 Cases 5 (mandating that the respondent file an answer along with relevant portions of the state court record). The court thus concludes that the affidavit was placed squarely into the record by the actions of both parties.[2]

However, it is not entirely clear whether the affidavit is sufficient evidence on which to base a finding of prejudice. The Magistrate Judge apparently did not think so, and did not discuss the affidavit testimony in his Second Report and Recommendation, filed after an evidentiary hearing was held, though it was referred to in his pre-hearing report. The court assumes that the Magistrate Judge concluded that, while affidavit testimony can be considered in the threshold stages of a section 2254 petition proceeding, once an evidentiary hearing is held, affidavit testimony can no longer be considered. This poses an interesting question of section 2254 procedural law, and one on which the court has been unable to locate any specific authority. However, after its own review of the question, the court agrees with petitioner that the Magistrate Judge erred and that affidavit testimony

---

[2] Even if it was not, the court deems the submission of the affidavit as a request for expansion of the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases, and as such it should be and is granted.

6

can be considered by a court entertaining a section 2254 petition at any time during the proceedings.[3]

The rules and statutes governing section 2254 proceedings establish definitively that affidavits may be entered into the record and used as a basis for decision in at least some circumstances. The relevant statutes provide that "in the discretion of the judge," "evidence may be taken . . . by affidavit." 28 U.S.C. § 2246. Rule 7 of the Rules Governing Section 2254 Cases allows for the expansion of the record to include various types of evidence, and provides specifically that "[a]ffidavits may be submitted and considered as part of the record." Likewise the court notes that evidence, presumably including affidavits, submitted in prior post-conviction proceedings can be considered in support of a section 2254 petition. *See also* 28 U.S.C. § 2247. Thus there is no general proscription against the use of Griffin's affidavit in resolving Fuller's petition.

However, a case could be made that, whatever the general status of affidavits in section 2254 proceedings, they should not be considered once the affiants have been given a chance to testify at an evidentiary hearing. The oral testimony should, perhaps, supersede any prior sworn statements. If this rule prevails, Griffin's affidavit may not be considered and the petition is due to be denied.

---

[3] The court notes that, as far as it can tell from the written record, respondents have never objected to the use of the affidavit in resolving this case. In fact, in a post-hearing brief they discussed potential testimony by Griffin which was set out in the affidavit and not mentioned at the hearing. *See Respondents' Post-Hearing Brief*, at 8. Thus whatever the proper status of affidavits in the post-hearing phase of a section 2254 petition, an argument can be made that the respondents have waived any objections to the use of the affidavit here. However, as the court concludes that an affidavit is properly considerable, with or without objection, it makes no final determination of the waiver issue.

7

The court concludes, however, that no such rule can be derived from the relevant rules and statutes. They explicitly allow for the introduction of affidavits as record evidence, with no express limitation on their use. Any rule of exclusion would thus have to be implied, and the practical purposes underlying the affidavit rules do not, in the court's view, call for such an implied principle. In fact, these purposes counsel in favor of a rule allowing affidavits to supplement oral testimony.

It is clear that the key reason for allowing the use of affidavits is to limit the number and complexity of the evidentiary hearings required in section 2254 cases. In some cases, of course, the goal is to avoid the need for a hearing entirely. However, the Advisory Committee Notes to Rule 7 of the Rules Governing Section 2254 Cases suggest that the additional evidence gleaned from affidavits and other sources "may also be helpful when an evidentiary hearing is required." Indeed, the notes suggest that affidavits may be "'helpful'" even when credibility is at issue. *Id.* (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970)). Thus it appears that the framers of the rules did not envision affidavits as a device whose usefulness would evaporate once a hearing was held.

Indeed, there are valuable uses for affidavits even after a hearing. As one commentator has noted, "affidavits still may be 'helpful' in . . . *narrowing the scope of the hearing to disputed matters.*" James S. Liebman & Randy Hertz, *Federal Habeus Corpus Practice and Procedure* § 19.5 n.13 (2d ed. 1994) (emphasis added). If affidavits lose their weight because a hearing is held, the parties would have to address every issue with every witness during the hearing. This contradicts the Rules' emphasis on minimizing the need for elaborate evidentiary hearings. The key purpose of the evidentiary hearing is, after all,

8

to explore questions of evidentiary weight and credibility. Where testimony does not raise such questions, i.e. where it is essentially uncontradicted, the slow but sure safeguards of an evidentiary hearing are not required. In such circumstances, there is no reason why the far more efficient affidavit form of testimony should not stand in for or supplement oral testimony. Thus the basic principles underlying section 2254's procedures suggest that uncontradicted[4] affidavits should be valid evidence at any stage of the proceedings. This understanding is entirely consistent with the plain language of the relevant statutes and rules, so the court holds that uncontradicted affidavits are valid evidence even during post-hearing consideration of a section 2254 petition.

In this case, Griffin's affidavit addressed the issue of what he would have testified to at the petitioner's trial. Griffin's sworn statements in this regard were never seriously questioned by respondents. Indeed, it is difficult to understand how they could be. Respondents had ample opportunity to offer up a challenge either in the form of contrary testimony, written questions, see 28 U.S.C. § 2246, or questions on cross-examination during the hearing. They did not do so, nor do they contend now that Griffin's testimony should be rejected in any particular. Thus the affidavit stands uncontradicted, and the court sees no useful purpose in forcing the petitioner to offer oral testimony as to every uncontradicted assertion of a witness. The affidavit conveys the same point more than adequately, and can therefore properly be included in the record for consideration by the court.

---

[4] The court expresses no opinion as to the validity of an affidavit which is contradicted by live testimony at a hearing.

9

In the court's view, the affidavit suggests conclusively that Griffin's testimony might well have affected the outcome of the trial. His testimony would have cast serious doubt on each of three lines of argument linking the petitioner to the drugs in question. While the respondents argue that a jury might question Griffin's credibility, might not believe his explanations about the keys and the trash,[5] and so forth, these arguments establish only that a jury might still convict. They do not establish that it *would*. What is clear at this point is that Griffin's testimony would have been entirely positive for the petitioner, would have put his case in a substantially better light than in the original trial, and would have weakened the three legs on which the government's case stood. Whether that case would actually collapse under the weight of trial is a question which can be definitively answered only by trying it. However, the court believes that there is at least a reasonable likelihood that it would, so the petitioner is entitled to his chance to find out.

Based on the foregoing, the court concludes that the Report and Recommendation is entitled to substantial weight. However, the court finds its ultimate conclusion erroneous so the court **DECLINES TO ADOPT** the recommendation. Instead, the court concludes that Mr. Fuller's petition is due to be granted. An appropriate judgment will be entered.

---

[5] For example, respondents argue that a jury could find it strange that a man unfamiliar with the residents of an apartment would walk into it bearing his own trash and ask to dispose of it. Respondents claim that this in fact shows "that the petitioner was familiar enough with the apartment and the activities there to know that his action would not be challenged." *Respondents' Post-Hearing Memorandum*, at 9. The court fails to understand how petitioner's explanation about the mail, already offered at his trial, would become more harmful and unbelievable simply because another witness corroborated it. Corroboration can only help. In fact, what respondents seem to have come up with is simply a new jury argument, apparently not used at the last trial. While this may be useful in the next trial, its potential effects on the jury are no reason to reject Fuller's petition.

10

Done, this _10th_ of February, 1999.

Edwin L. Nelson
United States District Judge